Jeremy V. Richards (CA Bar No. 102300)
John W. Lucas (CA Bar No. 271038)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail: jrichards@pszjlaw.com
         jlucas@pszjlaw.com

Attorneys for Plaintiff David K. Gottlieb,
Chapter 11 Trustee of the Estates of Solyman
Yashouafar and Massoud Aaron Yashouafar

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>SOLYMAN YASHOUAFAR and MASSOUD AARON YASHOUAFAR,[1]<br>Debtors. | District Court Case Number: CV 19-9915-JFW<br>Bankruptcy Case No: 1:16-bk-12255-GM<br>Adversary Case No: 1:17-ap-01040-MT<br>Bankruptcy Court Case Numbers (Jointly Administered): |
| In re:<br>SOLYMAN YASHOUAFAR,<br>Debtor. | Case No.: 1:16-bk-12255-GM<br>Chapter 11 |
| In re:<br>MASSOUD AARON YASHOUAFAR,<br>Debtor. | Case No.: 1:16-bk-12408-GM<br>Chapter 11 |
| Affects:<br>☑ Both Debtors<br>☐ Solyman Yashouafar<br>☐ Massoud Aaron Yashouafar | Adversary Case Number: |
| DAVID K. GOTTLIEB, as Chapter 11 Trustee for Massoud Aaron Yashouafar and Solyman Yashouafar,<br>Plaintiff,<br>v.<br>ELKWOOD ASSOCIATES, LLC, FIELDBROOK, INC., CITIVEST FINANCIAL SERVICES, INC., ISRAEL ABSELET, HOWARD ABSELET, CHASE MANHATTAN MORTGAGE COMPANY, QUALITY LOAN SERVICE CORPORATION, SODA PARTNERS, LLC, DMARC 2007-CD5 GARDEN STREET, AND STATE STREET BANK AND TRUST COMPANY,<br>Defendants. | 1:17-ap-01040-GM<br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE PLAINTIFF'S FIRST CLAIM FOR RELIEF (QUIET TITLE) AGAINST DEFENDANT ELKWOOD**<br>Date:<br>Time:<br>Place: |

---

[1] The Debtors, together with the last four digits of each Debtor's social security number are: Solyman Yashouafar (5875) and Massoud Aaron Yashouafar (6590).

DOCS_LA:324694.3 32274/001

I.

## PROCEDURAL BACKGROUND

The Court makes these findings of fact and conclusions of law in connection with a Motion for Summary Judgment on the First Claim for Relief for Quiet Title, brought by the Trustee against Defendants Elkwood and Fieldbrook [Dkt. No. 98] and a cross-motion for summary judgment brought by Defendants Elkwood and Fieldbrook on their Second Counterclaim against the Trustee for reformation of the Fieldbrook Assignment, and their Third Counterclaim against Trustee, for quiet title to the Rexford Home.[2]

Pursuant to the Trustee's Quiet Title Claim, the Trustee seeks to quiet title to the Rexford Home in the bankruptcy estate of Massoud on the basis that Elkwood had assigned the PWB Note and the Rexford DOT to Fieldbrook before it purported to credit bid and acquire the Rexford Home at the Rexford Foreclosure Sale.

Pursuant to their Reformation Claim, Elkwood and Fieldbrook seek to reform the Fieldbrook Assignment, to provide for the assignment of only $5.8 million of the PWB Note to Fieldbrook, thereby leaving the balance of the note and the Rexford DOT vested with Elkwood. Pursuant to their Quiet Title Claim, Elkwood and Fieldbrook seek to quiet title to the Rexford Home in the name of Elkwood.

Finally, pursuant to their Sixth Affirmative Defense, Elkwood and Fieldbrook assert a claim against the Trustee for various costs and expenses allegedly incurred by them after the Rexford Foreclosure Sale relating to the Rexford Home "[i]n the event Plaintiff is granted any relief based upon his Complaint in this action" (the "Reimbursement Claim").

The Court has already entered its Memorandum re Cross-Motions for Summary Judgment (the "Memorandum") [Dkt. No. 191], granting summary adjudication on the Trustee's First Claim for Relief and a summary adjudication denying Elkwood's and Fieldbrook's Reformation and Quiet Title Claims. The Memorandum determined that the Reimbursement Claim did not need to be adjudicated as a condition to ruling on the Trustee's First Claim for Relief, a decision that the Court has subsequently reaffirmed twice [Dkt. Nos.216;274]. The Findings of Fact contained herein

---

[2] All capitalized terms shall have the same meaning as set forth below.

DOCS_LA:324694.3 32274/001

summarize all of the undisputed factual findings made by the Court in the Memorandum. Further, the Conclusions of Law summarize, but do not limit or supersede, the legal conclusions set forth, and analyzed in greater detail in the Memorandum, which legal conclusions and analysis are incorporated herein by reference. The Conclusions of Law herein also include certain additional conclusions of law, not contained in the Memorandum, specifically the following: (a) Conclusions of Law numbers 40 through 43, inclusive, which relate to the propriety of entry of judgment on the Trustee's First Claim for Relief, assuming Federal Rule of Procedure, Rule 54(b) is still applicable to these proceedings, which the Court concludes it is not; and (b) Conclusions of Law numbers 44 through 46, inclusive, which relate to issues pertaining to the Trustee's right of possession, raised by the Elkwood Defendants subsequent to entry of the Memorandum.

## II.

## FINDINGS OF FACT[3]

1. On August 3, 2016 (the "**Petition Date**"), involuntary bankruptcy petitions were filed against Massoud Aaron Yashouafar ("**Massoud**") and Solyman Yashouafar ("**Solyman**" and together with Massoud, the "**Debtors**").

2. The Debtors stipulated to the entry of Orders for Relief in their respective cases, which Orders for Relief were entered on or about September 12, 2016.

3. The Debtors stipulated to the appointment of a chapter 11 trustee for each of their bankruptcy estates, and David K. Gottlieb ("**Plaintiff**" or "**Trustee**") was appointed as chapter 11 trustee for both Debtors by orders entered on or about September 20, 2016.

4. Prior to the Petition Date, Massoud through his family trust owned 910 Rexford Drive, Beverly Hills, CA (the "**Rexford Home**").

5. Prior to the Petition Date, Solyman through his family trust owned 580 Chalette Drive, Beverly Hills, CA (the "**Chalette Home**").

6. On March 20, 2009, Massoud and Solyman executed a promissory note (the "**PWB Note**") in favor of Pacific Western Bank ("**PWB**") in the principal amount of $6,551,575.00.

---

[3] Findings of Fact Nos. 1 through 26, inclusive, are all admitted by the Elkwood Defendants. [Dkt. No. 121; pages 3 – 10].

7. The family trust of Massoud secured the obligations of the PWB Note by, among other things, a deed of trust (the "**Rexford DOT**") against the Rexford Home for the benefit of PWB.

8. The family trust of Solyman secured the obligations of the PWB Note by, among other things, a deed of trust (the "**Chalette DOT**") against the Chalette Home for the benefit of PWB.

9. On December 29, 2014, Elkwood Associates, LLC ("**Elkwood**") purchased the PWB Note and PWB Loan Documents from PWB, in addition to the ancillary agreements and documents relating to the PWB Note, Rexford DOT, and Chalette DOT (collectively, the "**PWB Loan Documents**").

10. After Elkwood purchased the PWB Note and PWB Loan Documents, Elkwood caused Citivest Financial Services, Inc. ("**Citivest**") to be substituted as trustee under the Chalette DOT.

11. Citivest, as the trustee under the Chalette DOT, filed and served a Notice of Trustee's Sale (the "**Chalette Foreclosure Sale Notice**") for the benefit of Elkwood.

12. The Chalette Foreclosure Sale Notice was recorded on or about January 27, 2015.

13. On February 18, 2015, Elkwood executed a certain assignment (the "**Fieldbrook Assignment**") that assigned the entire Chalette DOT to Fieldbrook.

14. The Fieldbrook Assignment is titled as "ASSIGNMENT OF DEED OF TRUST AND PROMISSORY NOTE" (capitalized font in original).

15. The Fieldbrook Assignment contained the following language:

> For Value Received, the undersigned ELKWOOD ASSOCIATES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY hereby grants, assigns, transfers and conveys to FIELDBROOK, INC., A CALIFORNIA CORPORATION all of its right, title and beneficial Interest In and to that certain Deed of Trust dated MARCH 20, 2009 executed by SOL YMAN YASHOUAFAR, AS TRUSTEE OF THE SOLYMAN AND SOHEILA YASHOUAFAR 2004 TRUST DATED MARCH 8, 2004 as Trustor, to PACIFIC WESTERN BANK, as Trustee, for the benefit of PACIFIC WESTERN BANK as beneficiary and recorded as Instrument No. 20090425658, on March 25, 2009, In Book _____, Page _____ of Official Records in the

DOCS_LA:324694.3 32274/001                              3

>Office of the County Recorder of Los Angeles County, California, describing land in said county as,
>
>Lot 34 in Tract No. 24484, in the city of Beverly Hills, County of Los Angeles, State of California, as per map recorded in book 657, pages 99 and 100 of maps, In the office of the county recorder of said county.
>
>A.P.N. 4391-009-002 AKA: 580 CHALETTE DRIVE, BEVERLY HILLS, CA 90210
>
>Together with the Secured Promissory Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust, any liens, security interest, and remedies arising thereunder. This Assignment is made without recourse, representations or warranties of any kind except as may be set forth In any Loan Sale Agreement that may be between assignor and assignee.

16. The words that were used to assign the Chalette DOT are the exact same words that were used to assign the PWB Note to Fieldbrook.

17. As reflected by the language used in the Fieldbrook Assignment, the assignment was not limited or qualified nor was there any allocation or participation in the PWB Note in any manner.

18. On February 20, 2015, Citivest conducted a foreclosure sale under the PWB Note and Chalette DOT (the "**Chalette Foreclosure Sale**"). Citivest submitted an opening bid of $5.8 million on behalf of Fieldbrook, the beneficiary under the PWB Note and Chalette DOT. There being no other bids, the Chalette Home was sold to Fieldbrook at the Chalette Foreclosure Sale for a credit bid of $5.8 million.

19. On February 25, 2015, Citivest executed a *Trustee's Deed Upon Sale* (the "**Chalette Foreclosure Sale Deed**") conveying the Chalette Home to Fieldbrook in exchange for its $5,800,000 credit bid arising under the PWB Note, Chalette DOT, and Fieldbrook Assignment (the "**Chalette Transfer**").

20. The Chalette Foreclosure Sale Deed was recorded on March 6, 2015.

21. After Elkwood purchased the PWB Note and the other PWB Loan Documents, Elkwood caused Citivest to be substituted as the trustee under the Rexford DOT.

22. On or about January 26, 2015, Citivest, as the trustee under the Rexford DOT, filed and served a Notice of Trustee's Sale (the "**Rexford Foreclosure Sale Notice**") for the benefit of Elkwood.

23. The foreclosure sale of the Rexford Home was scheduled for February 23, 2015 at 9:30 a.m. (prevailing Pacific Time) on the steps of the southwest entrance of the United States Post Office located at 222 N. Grand Ave, Los Angeles, CA 90012.

24. On February 23, 2015, Citivest conducted a purported foreclosure sale of the Rexford Home (the "**Rexford Foreclosure Sale**"). Citivest, on behalf of Elkwood, opened the bidding with a credit bid of $782,508.05. There being no other parties appearing at the Rexford Foreclosure Sale, the Rexford Home was sold to Elkwood in exchange for a credit bid of $782,508.05.

25. On or about February 25, 2015, Citivest, on behalf of Elkwood, executed a *Trustee's Deed Upon Sale* (the "**Rexford Foreclosure Sale Deed**") conveying the Rexford Home to Elkwood. The Rexford Foreclosure Sale Deed reflects that Elkwood, not Fieldbrook, was the foreclosing party/beneficiary and that Elkwood took ownership of the Rexford Home by way of foreclosure in exchange for a purported credit bid of $782,508.05 under the PWB Note.

26. The Rexford Foreclosure Sale Deed was recorded on March 6, 2015. [Dkt. No. 83]

27. On or about March 7, 2015, Massoud and Elkwood executed a lease (the "Rexford Lease") for the Rexford Home with a term that expired in March 2017; the Rexford Lease required Massoud to pay Elkwood $25,000 per month during the term of the Rexford Lease. Answer [Dkt. No. 83], ¶ 85.

28. Neither Massoud nor anyone else made a lease payment to Elkwood under the Rexford Lease. Nevertheless, Elkwood permitted Massoud and his family to reside in the Rexford Home for at least two years. Answer [Dkt. No. 83], ¶ 87.

29. Massoud and his family occupied and benefitted from the full use and enjoyment of the Rexford Home from February 23, 2015, until they moved out in or about April, 2017. First Amended Counterclaim and Cross-Claim [Dkt. No.109], at ¶ 36.

30. To the extent any of the foregoing Findings of Fact are more appropriately construed as a Conclusion of Law, they shall be deemed such.

## CONCLUSIONS OF LAW

1. In order to succeed on a motion for summary judgment under Federal Rule of Civil Procedure 56, made applicable to adversary actions in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, the movant must establish the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *In re Aubrey*, 111 B.R. 268, 272 (BAP 9th Cir. 1990).

2. The moving party must support its motion with credible evidence, as defined in Federal Rule of Civil Procedure 56(c), which would entitle it to a directed verdict if not controverted at trial. *Id.*

3. If a party fails to address another party's assertion of fact, the court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2).

4. Substantive law determines which facts are material for purposes of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

5. "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

6. The court must view all the evidence in the light most favorable to the nonmoving party. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008).

7. The court may not evaluate the credibility of a witness or weigh the evidence. *California Steel & Tube v. Kaiser Steel Corp.*, 650 F.2d 1001, 1003 (9th Cir. 1981).

8. Quiet title claims are actionable under Cal. Civ. Pro. Code § 760.020. To state a claim for quiet title, a complaint must include (1) the subject property's description, including both its legal description and its street address or common designation; (2) plaintiff's alleged title to the property; (3) the adverse claims against which a determination is sought; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title against the adverse claims. *Metcalf v. Drexel Lending Grp.*, No. 08-CV-00731 W POR, 2008 WL 4748134, at *5 (S.D. Cal. Oct 29, 2008).

9. Under California law, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636.

10. "[I]t is not the parties' subjective intent that matters, but rather their objective intent, as evidenced by the words of the contract." *Block v. eBay, Inc.*, 747 F.3d 1135, 11138 (9th Cir. 2014) (internal quotations omitted).

11. "The parties' undisclosed intent or understanding is irrelevant to contract interpretation." *Reilly v. Inquest Tech., Inc.*, 218 Cal. App. 4th 536, 554 (2013).

12. A latent ambiguity exists when a document, while unambiguous on its face, may be reasonably susceptible to more than one possible meaning upon production of extrinsic evidence. *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006).

13. "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Id.* (quoting *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 37 (1968)). Extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract. *Pac.Gas & Elec., supra*, at 33.

14. The Fieldbrook Assignment is not reasonably susceptible to a reading that the PWB Note was bifurcated, allocated or participated and only $5.8 million of the note, secured by only the Chalette DOT, was be transferred to Fieldbrook while the remainder of the PWB Note and the Rexford DOT would remain with Elkwood.

15. The extrinsic evidence presented by Elkwood in connection with the summary judgment cross-motions "flatly contradicts" the language of the Fieldbrook Assignment. *Consolidated World Investments, Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 379 (1992).

16. The phrase "[t]ogether with the Secured Promissory Note or Notes therein described" is not reasonably susceptible to the reading "[t]ogether with *$5.8 million of* the Secured Promissory Note or Notes therein described . . . ." *See Gerdlund v. Elec. Dispensers Int'l*, 190 Cal. App.263, 272-273, 235 Cal. Rptr. 279, 284, 190 Cal. App.3d 263, (1987) (refusing to admit parol evidence where contract language stating that "[n]otice of termination may be given at any time and for any reason" was not reasonably susceptible to the propose reading that such notice could only be given "for any *good* reason.").

17. "The assignment of a debt secured by mortgage carries with it the security." Cal. Civ. Code § 2936. ("The assignment of a secured debt carries with it the security").

18. The Rexford DOT was also assigned to Fieldbrook before the Rexford Foreclosure Sale.

19. Participations "are contractual arrangements between a lender and a third party, in which the third party, or participant, provides funds to the lender. The lender, in turn, uses the funds from the participant to make loans to the borrower." *In re ACRO Bus. Fin. Corp.*, 357 B.R. 785, 787 (Bankr. D. Minn. 2006).

20. To determine whether a transaction is a participation agreement, courts have considered the following factors: "a) money is advanced by participant to a lead lender; b) a participant's right to repayment only arises when a lead lender is paid; c) only the lead lender can seek legal recourse against the borrower; and d) the document is evidence of the parties' true intentions." *In re Coronet Capital Co.*, 142 B.R. 78, 82 (Bankr. S.D.N.Y. 1992).

21. The language of the Fieldbrook Assignment indicates that the Elkwood Defendants intended an assignment, not a participation agreement. There is insufficient evidence and no legal support for considering the Fieldbrook Assignment to be a participation agreement.

22. The Trustee has standing to bring the Quiet Title Claim. *Yvanova v. New Century Mortgage Corp.*, 62 Cal. 4th 919, 937 (Cal. 2016) ("A foreclosed-upon borrower clearly meets the general standard for standing to sue by showing an invasion of his or her legally protected interests – the borrower has lost ownership to the home in an allegedly illegal trustee's sale.")

23. Prejudice is not an element of a quiet title claim and the Trustee does not need to demonstrate prejudice in connection with his Quiet Title Claim.

24. Even if the showing of prejudice is required, it is satisfied by the fact of the foreclosure. *Sciarratta v. U.S. Bank Nat'l Assn.*, 247 Cal. App. 4th 552, 565-567 (2016).

25. The Rexford Foreclosure Sale is void because Elkwood neither held the PWB Note (nor any part thereof) nor the Rexford DOT at the time of the Rexford Foreclosure Sale.

26. A contract may only be reformed to express the parties' true intentions "so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." Cal. Civ. Code § 3399.

27. Reformation is not available if the rights of a bona fide purchaser would be prejudiced. *Baines v. Zuieback*, 84 Cal. App. 2d 483, 491 (1948).

28. Pursuant to Bankruptcy Code § 544(a)(3), the Trustee has all of the rights and powers of a bona fide purchaser of real property that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the bankruptcy case.

29. A reformation action will be allowed against a hypothetical bona fide purchaser only if the purchaser had notice of the adverse interest. *In re Weisman*, 5 F.3d 417, 420 (9th Cir. 1993); *In re Probasco*, 839 F.2d 1352, 1354 (9th Cir. 1988).

30. The rights of a bona fide purchaser under Bankruptcy Code § 544(a)(3) are defined by state law. *In re Tleel*, 876 F.2d 768, 772 (9th Cir. 1989).

31. In California, a purchaser of real estate for value without actual or constructive notice of a prior interest is given status as a bona fide purchaser. *Id.*

32. As Bankruptcy Code § 544(a) specifies that a trustee's rights and powers as a bona fide purchaser are "without regard to any knowledge of the trustee or of any creditor", "actual notice cannot overcome the trustee's bona fide purchaser status." *Id.*

33. Constructive or inquiry notice can preclude a trustee's status as a bona fide purchaser under section 544(a)(3). *In re Harvey*, 222 B.R. 888, 893 (BAP 9th Cir. 1998).

34. Constructive notice in the context of real estate is provided by recordation of interests against the property. Cal. Civ. Code §§ 19, 1214.

35. A recorded document, if void, should be treated "as a blank sheet of paper" and therefore does not provide constructive notice. *City of Los Angeles v. Morgan*, 105 Cal. App. 2d 726, 733 (1951) ("it is obvious that invalid documents are not entitled to be recorded, but if they are recorded, they do not give constructive notice").

36. The rights and powers of a trustee as a bona fide purchaser of real estate pursuant to Bankruptcy Code § 544(a)(3) can be cut off by reasonably available information that would put a prudent purchaser on inquiry notice of an alleged interest. *In re Weisman,* 5 F.3d at 420.

37. As Massoud and his family were in possession of the Rexford Home on the Petition Date, a prudent purchaser would not have been on inquiry notice of any adverse interest asserted by Elkwood as of that date.

38. Without a showing of a right of redemption, Cal. Civ. Code § 1640 does not authorize a court to find that "a written contract includes provisions which do not appear upon its face, and enforce provisions as a part of the written contract." *Bradbury v. Higginson,* 167 Cal. 553, 559 (1914).

39. The Reimbursement Claim is not an affirmative defense to the Trustee's Quiet Title Claim but is, rather, a claim against the Massoud Estate that only comes into effect after judgment is entered on the Trustee's Quiet Title Claim.

40. The Court is not required to adjudicate the Reimbursement Claim before entering judgment on the Trustee's First Claim for Relief.

41. The only remaining claim to be adjudicated in this Adversary Proceeding, or otherwise, is the Reimbursement Claim.

42. There are no overlapping factual or legal issues relating to both the Quiet Title Claim and the Reimbursement Claim.

43. In light of entry of judgment on the Trustee's First Claim for Relief for Quiet Title, the Abselets' First Claim for Relief for Declaratory Relief should be dismissed as moot, and the Abselets do not object to such dismissal.

44. There is no just reason to delay entry of the judgment on the Quiet Title Claim until the Reimbursement Claim has been adjudicated. The bankruptcy estate needs to be administered and unnecessary delay harms all parties.

45. The right to possession of the Rexford Home is an issue that was raised by the Trustee's Third Amended Complaint and the Elkwood Defendants' First Amended Counterclaim.

There has never been any question that the trustee has been seeking possession of the Rexford property as an asset of the estate.

46. The Trustee is not required to plead a separate claim for ejectment in order to obtain possession of the Rexford Home. *Medeiros v. Medeiros*, 177 Cal. App 2d 69, 1 Cal. Rptr. 696 (1960)(subject matter of action and issues involved are determined from facts alleged rather than title of the pleadings or the character of the recovery suggested in the prayer); *Duckett v. Adolph Wexler B. & F. Corp.*, 2 Cal. 2d 263-65, 40 P.2d 506 (1935)(one incident of ownership is possession of the property).

47. Judgment on the Quiet Title Claim entitles the Trustee to the issuance of a writ of possession or other available remedy to obtain possession of the Rexford Home. A judgment for trustee quieting title results in the Rexford property becoming property of the Massoud bankruptcy estate pursuant to 11 U.S.C. §541(a)(1).

48. Elkwood has not alleged any facts or advanced any legal argument that would entitle it to remain in possession of the Rexford Home upon entry of a judgment on the Quiet Title Claim in favor of the Trustee.

49. To the extent that any of the foregoing Conclusions of Law are more appropriately construed as a Finding of Fact, it shall be deemed and construed as such.

DATED: December 10, 2019

HONORABLE JOHN F. WALTER
UNITED STATES DISTRICT JUDGE

DOCS_LA:324694.3 32274/001    11